UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANNETTE FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-00893-JEO |
| ) | |
| NANCY BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Plaintiff Annette Ford brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her Disability Income Benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB benefits on August 8, 2014, alleging she became disabled beginning April 19, 2012. It was initially denied by an administrative law judge ("ALJ"). The Appeals Council ("AC") denied Plaintiff's request for review. (R. 1).[2] The matter is ripe for judicial review.

## II. FACTS

Plaintiff previously applied for DIB in May 2010, but an ALJ denied her application on May 18, 2012. (R. 67-96). The AC denied her request for review, and she did not seek judicial review. (R. 100-03). That decision is final and binding. (R. 18). Accordingly, the proper onset date for purposes of review is May 19, 2012.[3] (*Id.*)

Plaintiff was 55 years old at the time of the ALJ's decision that is under review. (R. 36-37). She previously worked as a machine assembler and house supervisor. (R. 36, 61). She alleges disability due to chronic obstructive pulmonary disease ("COPD"), fibromyalgia, depression, anxiety, migraine headaches, "merolgie," and panic attacks. (R. 212).

---

[2]References herein to "R. __" are to the administrative record found at Docs. 7-1 through 7-11 in the court's record.

[3]Neither party challenges this determination by the ALJ. Plaintiff does note in her brief an onset date of April 19, 2012. (Doc. 11 at 5). This distinction is not significant in the court's consideration of the merits.

Following Plaintiff's hearing, the ALJ found that she last met the insured status requirements of the Social Security Act on December 31, 2014. (R. 20). Plaintiff had the medically determinable severe impairments of osteoarthritis, meralgia peresthetica,[4] COPD, mild degenerative disc disease, fibromyalgia, anxiety and depression. (R. 21). The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id.*) He further found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with limitations. (R. 24). He determined that Plaintiff did not have the ability to perform her past relevant work. (R. 36). He further found that based on Plaintiff's age, education, work experience and RFC, and the testimony of a vocational expert ("VE"), Plaintiff could work as an assembler, laundry worker, and hand packer. (R. 36-37). The ALJ concluded that Plaintiff was not disabled. (R. 37).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the

---

[4] "Meralgia paresthetica is a condition that causes numbness, pain, or a burning feeling in your outer thigh.... It happens when there's too much pressure on or damage to one of the nerves in your leg." https://www.webmd.com/diabetes/guide/meralgia-paresthetica#1 (last visited June 25, 2018).

3

Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of*

*Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

5

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[5] The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1520(a). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff asserts that the ALJ erred in that he failed to properly assess her limitations and complaints of pain. (Doc. 11 at 4-11). She argues that the ALJ (1) failed to properly consider the medical evidence, (2) improperly relied on her daily activities, and (3) failed to find her mental limitations disabling. (*Id*.) The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements. (Doc. 12 at 4-12). Each area will be addressed below.

### A. Generally

As noted above, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Moore,* 405 F.3d at 1211 ("An

---

[5]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

individual claiming Social Security disability benefits must prove that she is disabled."); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."). Specifically, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain ... or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The parties agree that Social Security Regulation ("SSR") 16-3p is

applicable.

> SSR 16-3p rescinded a previous social security ruling that concerned the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id.* Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464-66. The Commission stated:
>
>> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult ... with a title XVI disability claim.
>
> *Id.* at 49,463. In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged. *Id.*

*Contreras-Zambrano v. Social Sec. Adm.*, 724 F. App'x 700, 702-03 (11th Cir. 2018).

### B. Medical Records

Plaintiff argues the ALJ erred in finding that the medical evidence "is only partially supportive of [her] allegations." (Doc. 11 at 6 (citing R. 15)). Specifically, she argues that the ALJ "mischaracterized and failed to properly consider [her] longitudinal treatment history which is replete with complaints of and treatment for her severe pain." (*Id*.) Supporting her argument, Plaintiff states that the medical records relating to her pain management show the following: (1) she reported neck and back pain at the level of 8 out of 10 on October 22, 2013 (R. 307, 309); (2) a lumbar spine MRI from July 17, 2012, documenting the presence of degenerative disc disease and a mild concentric annular bulge at L5-S1 and a cervical spine MRI showing mild cervical spondylosis and degenerative disc disease most significant at C4-5 (R. 309); (3) reports that her medication reduced the pain by 20%, but her pain was aggravated by inactivity, sitting, walking, twisting and bending (R. 307); (4) records from Dr. Beretta from 2014-2016 documenting her reports that the epidural steroid injections she received did not improve her situation and that radiofrequency treatments increased the pain (R. 316, 318, 320, 408, 410, 533, 535); and (5) numerous prescriptions for

medications, including Robaxin, Depakote, Seroquel, Ambien, Ativan, Maxalt, Rizatriptan, Viibryd, Alprazolam, Cymbalta, Cyclopenzaprine, Tylenol-Codeine, Metanx, Nucynta and Neurontin (R. 293-95). (Doc. 11 at 7). She further argues that this evidence shows she is limited to sedentary level of exertion at best. (*Id.* at 8). That being the circumstance, se argues, the ALJ should have found her to be disabled under Medical Vocational Guideline 201.14. (*Id.*)

Plaintiff's July 2012 cervical and lumbar spine MRIs reveals some abnormalities; however, the findings are generally mild, with no disc herniation or central stenosis. (R. 27, 309). Plaintiff's electromyogram and nerve conduction studies in November 2012 similarly shows only mild changes in her right ulnar sensory nerve and are otherwise normal. (R. 27, 309-10). Her treatment records for the relevant period – particularly her clinical examinations – do not document debilitating pain or physical limitations. (*See* R. 27-34, 306-12, 316, 318, 320, 336-48, 379-80, 391-92, 396-97, 404-06).[6] There is no dispute that Plaintiff's treatment records show that she did undergo multiple epidural steroid injections and radio frequency treatment that was not effective. (*See* R. 316).[7] Those same

---

[6] The court does note that on October 22, 2013, Plaintiff reported back pain at a level of 8 out of 10. (R. 307-09). This is the only reading at this level during the entire period. Most records do not report any significant levels of pain.

[7] The cites in Plaintiff's brief on this issue is to essentially the same paragraph that repeats her medical history. (Doc. 11 at 7).

documents show that her physical exams revealed negative straight leg tests and "mild" degnerative disc disease. (R. 316, 318, 320, 408, 410, 533, 535).[8] Contrary to Plaintiff's argument, the ALJ did consider her longitudinal treatment, but found it to be unsupportive of her disability claim.

To the extent Plaintiff argues that her records show she was prescribed numerous medications, including narcotic pain medications, she is correct. Plaintiff goes on to characterize this as showing that she "is experiencing at least chronic moderately severe pain." (Doc. 11 at 7). However, that is not sufficient to undercut the totality of the evidence supporting the ALJ's decision. Additionally, that evidence tends to show that her treatment plan, including the medications, adequately controlled her symptoms. It does not demonstrate an inability to work.

### C. Daily Activities

Plaintiff next argues that the ALJ erred in relying "upon Plaintiff's reported daily activities to support his negative credibility finding." (Doc. 11 at 9). An ALJ is permitted to consider daily activities in determining an individual's RFC. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). However, "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a person from disability benefits.

---

[8]The last two records (R. 533 (March 4, 2016) and 535 (November 20, 2015)) are for dates outside her coverage date (December 31, 2015). (R. 20).

*Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

The ALJ considered Plaintiff's daily activities. He stated:

> The undersigned also recognizes that the claimant admitted to performing many daily activities that are not consistent with severe pain, shortness of breath symptoms related to COPD, depression, and anxiety. The claimant walks without an assistive device.... She reported she does all the household chores with the exception of vacuuming, mopping, and sweeping. *She reported she washes dishes, dusts, makes the beds, does laundry, cleans the kitchen and bathroom, and cooks*. She reported she walks around the block daily for 20-30 minutes. She remarked that she plays 1-2 games on the computer and she watches a movie on the television.... Overall, the claimant's activities and objective medical evidence do not support the claimant's allegations to the extent alleged.

(R. 34 (record citations omitted and italics in original)). Plaintiff argues that the ALJ mischaracterized her daily activities and "misconstrued how those activities contradicted [her] allegations regarding debilitating pain." (Doc. 11 at 11). The court agrees that the italicized portion of the above quote tends to overstate Plaintiff's daily activities. Plaintiff did testify that she does clean and wash clothes, but she also stated that she has to sit down. (R. 56). She also stated that she gets sleepy when she takes her medications. (*Id*.) She stated on her Adult Function Report that she did dusting and light wash and that she prepared light meals, but had to rest if she did more than that. (R. 226). Her husband reported that she did a "little bit of vacuuming, making beds & some light laundry[,] dusting [&] sweeping the car port" two or three times a week. (R. 234). However,

12

these discrepancies are insufficient to undercut the ALJ's ultimate determination.

**D.     Mental Limitations**

Plaintiff next asserts that the ALJ erred when he found that her mental limitations were not disabling. (Doc. 11 at 11). The Commissioner counters that the record as a whole supports the ALJ's determination. (Doc. 12 at 11).

Plaintiff underwent a psychological evaluation on August 11, 2010, by Dr. Robert Storjohann. He observed that Plaintiff (1) was "dysphoric, despondent, restless, and ill-at-ease"; (2) was "severely depressed, quite anxious, and tense"; (3) possessed an in tact memory; (4) had "logical, coherent, and goal-directed" though and speech; (5) "[was] able to make acceptable work decisions" and "to manage her own financial affairs"; and (6) was of low average intellectual functioning. (R. 298). He diagnosed her as having "[m]ajor depression, recurrent, severe," generalized anxiety disorder, and generalized social phobia. (*Id.*) He also stated her prognosis was poor for the next six to twelve months; "[s]he is in need of mental health treatment; she has "moderate deficits in her ability to understand, carry out, and remember instructions in a work setting"; and she has "marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (R. 298-99).

On April 4, 2013, Dr. Carl T. Forsina with Northside Medical Associates

saw Plaintiff. He noted she was evidencing signs of depression. He diagnosed her with depression, chronic pain, bi-polar, migraines, fibromyalgia, and neuropathy. He also noted, "Refer to psych <u>ASAP</u>." (R. 380 (underlying and capitals in original)). Plaintiff's next visit with Dr. Forsina was August 22, 2014. It was unremarkable. It appears that her medications were refilled. (R. 379).

Plaintiff visited GrandView Behavioral Health on September 19, 2014, as a new patient due to complaints that her "moods are not good." (R. 478). She reported that her symptoms had been present for the last four years and she experienced daily anhedonia,[9] a feeling of helplessness, vague suicide ideations, poor energy and irritability. (*Id*.) She was diagnosed with depression and anxiety.[10] She was seen on October 15, 2014. Her depression was described as mild, but her anxiety was severe. (R. 482). She stated that her "moods had been fairly stable since [her] last session." (R. 474). She voiced feeling of guilt to the therapist concerning her son's incarceration. (*Id*.) She was continued on medications. (R. 478). On December 3, 2014, she was seen again. It was noted

---

[9]"People who experience anhedonia have lost interest in activities they used to enjoy and have a decreased ability to feel pleasure. It's a core symptom of major depressive disorder, but it can also be a symptom of other mental health disorders. Some people who experience anhedonia don't have a mental disorder." https://www.healthline.com/health/depression/anhedonia (last visited June 25, 2018).

[10]During Plaintiff's visit to Dr. Frosina on September 26, 2014, she did not complain of any anxiety or depression. (R. 391).

she had an inability to leave the house and she was fearful of crowds. (R. 470, 483). During this session, the therapist discussed with Plaintiff the possibility that her mood disturbance could relate to the loss of her job, which might result in a felling of a loss of purpose in her life. (R. 470).

In February 2015, Plaintiff reported during her visit that her depression and anxiety were better. She stated that her moods had been fairly stable and she was experiencing good and bad days. (R. 459-60). She voiced concerns with the anticipated impact of her son returning home from prison. (*Id.*) During her April 2015 visit, she reported increased anxiety, but her moods were stable. (R. 454-55). She stated that she had adjusted well to her son's return home. (R. 454). During her July 2015 visit, she reported her panic attacks were still bad when she leaves the house, she was "forget[ing] a lot," her depression was still bad, and she was experiencing "excessive daytime sedation." (R. 452-53). She attributed her being upset to her son's failure of a drug screen and his being returned to prison. (R. 453). In her September 2015 visit, she stated her condition was worsening despite treatment and therapy. (R. 444). She complained of being over sedated. (*Id.*) Her prognosis was "guarded" until a determinations on her disability. Her doctor adjusted her medication. (*Id.*) On October 19, 2015, Plaintiff called

complaining that she was not sleeping well. (R. 422).[11]

Dr. Robert Estock, a state agency psychiatric consultant, reviewed Plaintiff's records in October 2014. (R. 120-22). He determined that Plaintiff suffers from severe affective and anxiety disorders. These impairments, according to Dr. Estock, cause "mild" limitations on her activities of daily living, a moderate restriction in social functioning; a moderate limitation in concentration, persistence, or pace; and no episodes of decompensation for extended periods. (*Id.*)

Dr. Lucille Bodenheimer, an examining clinical psychologist, also examined Plaintiff in October 2014. Dr. Bodenheimer found Plaintiff (1) was alert and oriented; (2) had some anxiety, but her thought content was otherwise unremarkable; (3) severely abuses caffeine and sugar, and appears to be dependent on the same; (4) posses fair to poor insight and judgment; (5) has a "Low Average to Borderline range" of intellectual functioning; and (6) naps twice a day, does chores, exercises, and has poor dietary habits. (R. 396-98). Dr. Bodenheimer questioned Plaintiff's motivation and cooperation during the examination process

---

[11]Medical records from Nothside Medical Associates from March 13, 2015, through April 27, 2015, do not show any evidence of debilitating symptoms related to Plaintiff's mental health. She was diagnosed with depression, but her evaluations show no sleep disturbances, she was not feeling tired or poorly, and she was orientation as to time, place and person. (R. 414-15, 417-19, 420).

due to her difficulty answering simple questions.[12] (R. 399). Dr. Bodenheimer concluded that Plaintiff "would be able to understand, carry out and remember simple instructions." (*Id*.) She noted, however, that due to Plaintiff's caffeine and sugar intoxication, she would have difficulty responding appropriately to supervision, coworkers and work pressures in a work setting." (*Id*.) She further stated that if Plaintiff "was not approved for disability, she might make a good Vocations Rehabilitation Services candidate for Work Transition Training." (*Id*.)

The ALJ afforded substantial weight to the opinions of Dr. Estock and Dr. Bodenheimer. He found that Dr. Estock's opinion was consistent with the evidence of record "showing some psychological treatment and medication treatment." (R. 34). He also stated that Dr. Estock's opinion is "consistent [with] and fully supports the findings in this decision and support[s] the limitations noted in the established residual functional capacity." (*Id*.) The ALJ further stated that Dr. Bodenheimer's opinion is consistent with (1) her clinical findings; (2) "the evidence of record, which reveals limited psychological treatment"; (3) the fact that Plaintiff is being "treated with medication and her condition is generally stabilized with treatment"; and (4) Plaintiff's ability "to perform many routine

---

[12]The example cited concerned her inability to recall her high school graduation year. (R. 395, 399).

17

daily activities such as performing household chores and playing computer games." (R. 35). Finally, the ALJ noted that Dr. Bodenheimer's opinion is also "generally substantiated by the objective medical evidence [and Plaintiff's] questionable 'malingering' casts doubt on [the] validity of all of [Plaintiff's] allegations." (*Id.*)

The court finds that substantial evidence supports the ALJ's evaluation of the mental health evidence, including the opinions of Dr. Estock and Dr. Bodenheimer as they relate to the relevant period – May 19, 2012 through December 31, 2014. Plaintiff has not demonstrated that the evidence supports her subjective statements of disabling symptoms and limitations during the insured period. The ALJ properly considered all the evidence and determined Plaintiff limitations in formulating her RFC, including that she

> can understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature. She can make simple, work-related decisions, but cannot carry out any complex instructions and cannot engage in any long-term planning, negotiation, or independent goal-setting. She can tolerate occasional interaction with supervisors and co-workers, but no more than superficial interaction with members of the general public. She can tolerate only minor, infrequent changes within the workplace.

(R. 24). Plaintiff has not adequately challenged the ALJ's determination given the differential review standards.

To the extent Plaintiff argues that the ALJ did not adequately articulate his reasons for failing to "credit" her testimony, the court disagrees. (Doc. 11 at 4 & 11 (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)). The detailed decision of the ALJ properly weighs Plaintiff's testimony along with the other evidence.

In sum, the court cannot find under the totality of the record that Plaintiff is entitled to any relief. Substantial evidence supports the ALJ's decision.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 29th day of June, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge